Bullard, J.
The plaintiffs, who represent themselves to be the heirs of Claude Joseph Dubreuil Tillars, assert title to a lot of ground in the city of New Orleans, on which the branch Mint of the United States is built; and this action is brought against several persons in the actual occupancy of the property, who excepted to the petition, making them parties, on the grounds: 1st. That it appears from the petition that the United States are in possession of the square of ground for which the suit is brought, and that the respondents cannot be called on to defend the said suit. 2d. That, in point of fact, the square of ground is wholly employed and in possession of the United States, for the purposes of a branch Mint, and all the buildings erected thereon were built, and have been ever since possessed by the United States, for that purpose, and its necessary appendages. That they have thus possessed since 1835, in virtue of a cession made to them by the Corporation of New Orleans. That the respondents are officers of the Mint, and are not in possession thereof, and are without authority to take possession of said square, or to represent the United .States, in defending this suit. 3d. That the plaintiffs, well knowing the illegality of an action instituted directly against the United States, have brought this action against the respon *501 dents in order to effect indirectly, what would be illegal, if directly done. On these grounds they pray to be dismissed.
The defendants exhibited their commissions as officers of the branch Mint of the United States, and a copy of the contract between the city and the Government, relating to the use of the lot for that purpose. The exceptions are signed by the District Attorney of the United States.
The District Court being of opinion, that, under art. 43 of the Code of Practice, such an action must be brought against the person actually in possession, although he be the farmer or lessee, and that the defendants having disclaimed title, and shown that the possession is in the government, which cannot be sued, and that those officers do not come within the provisions of the 43d article, sustained the plea, and the plaintiffs appealed.
The question which the case presents may be regarded in a two-fold light: First, as it relates to the technical objection arising out of the 43d article of the Code of Practice relating to the petitory actiou ; and secondly, as to the objection that the United States are substantially parties in interest, and are not amenable to the jurisdiction of the State courts as parties defendant.
I. The article of the Code relied on, requires the petitory action to be brought against the person who is in the actual possession of the immoveable, even if the person having the possession, be only the farmer or lessee. Much' stress has been laid upon the word possession, as if the person sued must have a right of possession in himself; and yet a farmer or lessee, who may be sued in the first instance, has only the occupancy, and his possession is that of the owner. This construction is fortified by the consideration that in the French text the word detenteur, which is equivalent to occupant, is used. Hence the same article requires, that when the farmer or less'ee thus sued, declares the name and residence of his lessor, he shall be made a party, if he reside in the State or be represented therein ; and we held in Plummer v. Schlatre, (4 Rob. 29,) that this expression implies that,i-f such lessor reside out of the State anc^be not represented therein, the lessee shall take upon himself to defend the suit in the absence of the owner of the property. According to these principles, if the exception in the present case had disclosed the *502 fact that the defendants held under a foreign corporation, not represented in the State, we should be of opinion that they had the faculty standi injudicio. in relation to the title.
The question, whether the action of revendication could be brought against one who possessed in the name of another, appears to have been controverted among the Roman jurists. The Proculians maintained the negative, but Ulpian holds the opinion, that it may be maintained against those who are in possession, in whatever manner, or by whatever titles they possess. “Puto auiem db omnibus qui tenent et habent restituendi facultatem, peti posse? L. 9, ff, De loci vend. According to Pothier, the French law allowed the action to be brought against any occupant, but if he declares he possesses as tenant, or lessee of another, the person under whom he holds ought to be cited, for says he : “ the question of title to the thing sued for, cannot be discussed nor decided with the farmer or tenant, who does not pretend to the ownership : it can only be so with him who possesses the estate by his tenant, who in quality of possessor is its presumed owner until the plaintiff in the action of revendication establishes his right.” Droit de Domaine de Propriété, No. 298, (vol. S, Paris s!b 1827.)
The Code of Practice has adopted a middle course, and requires the farmer or tenant to be dismissed, and the owner for whom he possesses to be made a party, when he resides in the State, or is duly represented.
II. This leads us to inquire secondly, whether the action can be proceeded in, when the parties in possession disclose, as the owner under whom they hold, the United States, who cannot be sued, but who are evidently parties in interest.
' It is quite clear, that the United States cannot be sued in any court as a party defendant on the record ; but it appears settled that in the other States, actions may be brought and maintained against public officers, when the government alone is a party in interest; and this is particularly the case in actions of ejectment. In the opinion of the Supreme Court of the United States in the case of Wilcox v. Jackson, to which we shall have occasion to recur again for a different purpose, it is said by Mr. Justice Barbour : “ This then being the case, and this suit having been in *503 effect against the United States, to hold that the party could recover as to them, would be to hold that a party having an inchoate and imperfect title, could recover against one in whom resided the perfect title.”
Thus the decision of that case, which was an ejectment against an officer of the army holding under the the United States, turned upon this distinction ; that, although by the law of Illinois a certificate of purchase and a patent certificate, without a patent, (inchoate titles,) were sufficient to maintain án action of ejectment in relation to lands severed from the domain, and in ordinary cases, yet when the action is against, one holding under the United States, and the government is substantially a party in interest, a recovery could not be had without a patent; and the plaintiffs failed because no patent had ever issued, and the legal title was in the United States. In that case the judgment in the State court was for the plaintiffs, and the United States, regarding their officer as amere nominal party, prosecuted the writ of error themselves. No question was made as to the form of the action. The court held that “ whenever the question in any court, State or Federal, is, whether a title to land which had been once the property of the United States has passed, that question must be solved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then that property, like all other property in the State is subject to State legislation ; so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States.” 13 Peters, 498.
The rule which governs actions of ejectment at common law appears to be, that after service of the ejectment, which is upon the tenant in possession, the defendant should, in case he means to defend the title, appear and confess lease, entry and ouster, which brings the title only into issue. Where the tenant has not given notice to his landlord, which he is bound to do in England under severe penalties, and there is judgment against the casual ejector, the court will set aside the judgment on the landlord’s entering into the usual rule to try the title ; or the landlord may bring a writ of error, which will be a supersedeas of the proceedings. Espinasse’s Nisi Prius, 443.
*504 That the jurisdiction of a State is co-extensive with its territory and its legislation, except where it has consented to part with any portion of it under the constitution of the United States, is a proposition which cannot be combated. It applies to every portion of its soil, which has been severed from the public domain. 17 Johnson, 233. Sergeants’ Constitutional Law, 266. 13 Peters, loco citato. 2 Mason, 60.
In the case of an illegal taking of property by an officer acting under the authority of the United States, and for the use and benefit of the government, we do not doubt but that an action would lie against the officer, or agent, of the United States, although the party in interest would be the United States. In such cases, jurisdiction is neither given nor ousted by the parties concerned in interest, but by the relative situation of the parties named on the record. “ If,” says the court in Osborn v. The Bank of the United States, “ the person who is the real principal, the person who is the real source of the mischief, by whose power and for whose advantage it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best established principles to say, that the law could not afford the same remedies against the agents employed in doing the wrong which they would afford against him, could his principal be joined in the suit.” 9 Wheaton, 738. In the case of Stokes et al. v. The Post Master General, that officer had no personal interest in the matter, and the amount to be allowed was to be paid out of the treasury of the United States.
Upon the whole we conclude, that, if, when the party in possession, who is sued in such an action points out the owner under whom he holds, he is bound to defend the action, if such owner does not live in the State, and is not represented in it; still more should he so, when such proprietor, lessor or principal is the United States, against whom no direct action can be brought. If it were not so, the clearest right might be defeated, and the parly suing be without remedy. The court, therefore, in our opinion erred in sustaining the exceptions.
It is, therefore, ordered and decreed, that the judgment of the District Court he reversed, and it is further ordered, that the exceptions be overruled, and the case remanded for further proceed *505 ings according to law, and that the defendants pay the costs of the appeal.*

 Downs, for a re-hearing. The judgment of this court concedes, that if the possessor, or occupant of land be sued in a petitory action, he shall be discharged from the suit, if he name the party under whom he holds, provided such party resides, or is represented in the State. The defendants say they occupy, or possess the land merely as officers of the United Slates, and it is submitted that the United States are fully represented in the State of Louisiana. The 35th section of the act of 1789 (Story’s Laws, p. 67, chap. 20,) requires the District Attorney to “ prosecute all civil actions in which the United States are concerned.” This act does not restrict the District Attorney to cases in which the United States are piaintifis, hut extends his duty to “ all civil actions in which the United States are concerned.” It is true, the act uses the word “ prosecute,” yet the uniform construction, and invariable practice have been, to require the District Attorneys to appear in all suits in which the United States are interested. They intervene in every ease in which the United States have an interest, and their acts are over regarded as obligatory upon the government. They are always cited by the special orders of the courts if the rights of the United States seem to be involved in the matter in controversy, and admissions made by them during the trial of a cause, are considered binding upon the United States. Besides, the act of 29th of May, 1830, sect. 7. (Story’s Laws, vol. 4. p. 2207,) requires the Solicitor of the Treasury to instruct the District Attorneys “ in all matters and proceedings appertaining to suits in which the United States are a party interested." It is, therefore, submitted, that the District Attorney for the District of Louisiana is authorized by law to represent the United States in all judicial proceedings in the State of Louisiana, and that the defendants should be dismissed from this suit.
But have the United States a residence ? and if they have, is it in the State, or out of the State? The United States are sovereign. If in popular governments, where the sovereignty is in the people, any residence can be predicated of the sovereign, it must be co-extensive with the territory over which the powers of sovereignty are exercised. It follows, that the United States reside as much in Louisiana as they do any where else. Therefore, as the United States reside in Louisiana, defendants should be discharged.
Although the arguments based on the 43d art. of the Code of Practice are regarded as technical, they are not, on that account, less worthy the attention of the court. Technical rules are intended for the simplification of judicial proceedings, and to promote the proper administration of the laws. The rule that dismisses the lessee, or occupant, from the petitory action seems to exist in all systems, and is founded in wisdom. The mere lessee has no interest in defending the suit, and is indifferent to the proof which the plaintiff may make of his title. Plaintiff’s evidence of ownership may be defective, but the lessee failing to criticize and expose it, judgment is rendered for the plaintiff, he is placed in possession while the claimant who was before in the lawful possession, would thereafter, in his action, be compelled to rely upon the strength of his own title, instead of the weakness of his adversary’s. *506 If the’United States were to come in, and offer to defend this suit, the court would certainly permit them to do so. If then they may come in and plead to the merits, why may they not except to the jurisdiction? The court erred in regarding the United States merely as a party interested. The United States are substantially the party sued. If, by their voluntary appearance, the nominal defendants would be dismissed, then the United States are the real parties defendant, though not named in the record : and the judgment says, “ it is quite clear that the United States cannot be sued in a direct action.” In the case of Wilcox v. Jackson, no exception was taken to the jurisdiction of the court, and as the want of jurisdiction was by reason of something personal to the party who had the right to make it, an appearance and answer gave jurisdiction. The fact that there are no cases to be found in which suit has been instituted against the United States, either in a personal or a petitory action, direelly or indirectly, goes far to show that no action can be maintained against them. The Fort Dearborn and the Pea Patch eases are the only exceptions to what has been stated, and in neither of these was there a plea to the jurisdiction.
A distinction is taken by the court as to its jurisdiction in actions of this nature, over land severed from the public domain, and land that has not been so severed.' The eases from 2 Mason and 17 Johnson, cited by the court in support of this distinction, illustrate an entirely different principle. It is not disputed, that all offences committed upon any portion of the territory within the boundaries of a State, in places other than those “ ceded” are cognizable in the State tribunals. The cases in Mason and Johnson, involved alone the inquiry, whether the crimes for which the prisoners stood charged were within the State or federal jurisdiction? Whether the places where the offences were committed, were such as the Constitution of the United States gave Congress “ exclusive legislation” over? This is not the question in this case. The question here is, has a State court jurisdiction of a suit in which the United States are substantially the parties defendant, though not named as such on the record? If the officers of the United States, having the lawful possession of land severed from the public domain, can be expelled by the judgment of the court, they could be expelled also in cases where the land was not so severed. The analogy drawn from the Mason and Johnson cases proves too much ; because, if the application of these cases by the court be correct, they would prove that the federal tribunals had jurisdiction of crimes committed upon the public domain within the limits of a State, which, we believe, has never been pretended. In the Fort Dearborn case, the jurisdiction of the Illinois courts was not sustained because the land in dispute had been severed from the public domain, for, in fact, the land was still a part of the public domain. If that case maintains the jurisdiction of the State judiciary in suits for land, substantially against the United States, it extends that jurisdiction over the whole public domain in like cases.
It is certainly true that no officer can plead the authority of his sovereign in justification of a trespass. In the great McLeod case, the Supreme Court of New York held McLeod responsible, notwithstanding he acted under the authority, or order of his sovereign, and our books are full of eases in which punishments have been inflicted upon officers, acting under orders of the Government, because no authority can justify a tort. In the case of Osborne v. Bank of the United States, cited by the court, Judge Marshall, expressly says, that “the exemption of the *507 State from suability, is no objection to the proceedings against its officers, for executing an unconstitutional law.” It is readily admitted, that if the defendants in this ease, were sued for a trespass, or a tort, or held possession of the land by violence, the “ exemption of the” United States “ from suability, would be no objection to the proceedings against their officers.” But such is not the ease. In the case of Cary et al. v. Curtis, 3 Howard, 236, Daniel, J., in delivering the opinion of the court says: “ That the government [of the United States] as a general rule, claims exemption from being sued in its own courts. That although, as being charged with the administration of the law it will resort to these courts as means of securing this great end, it will not permit itself to be impleaded therein, save in instances forming conceded and express exceptions." See, also, 7 Mass. 259, and McCarty y. Gould, 1 B. & Beatty, 389.

Re-hearing refused.